CASE 20—PETITION EQUITY—JUNE 21.

# Justices of Marshall County Court vs. Justices of Calloway County Court.

### APPEAL FROM CALLOWAY CIRCUIT COURT.

In 1834, six thousand acres of land west of the Tennessee river were appropriated by the State to Calloway county, for the endowment of seminaries of learning. In 1842, Marshall county was established wholly out of the territory of Calloway, by an act of the Legislature, which provided that Marshall should have one half of the six thousand acres of land aforesaid, and requiring the Calloway county court to transfer the same to the county court of Marshall. Many acts of the Legislature were passed in reference to these lands, and Calloway county had disposed of all the land except two thousand and eighty acres. *Held by the court*—That the division of the land between the two counties by act of the Legislature was constitutional—that the claim of Marshall county to her proportion of the land was not barred by the statute of limitation, and that Marshall ought to recover at least to the extent of the two thousand and eighty acres now remaining undisposed of.

JOHN M. HARLAN, P. PALMER, J. C. GILBERT, and JOHN RODMAN,                    For Appellants,

CITED—

*Act of* 1798, *M. & B.'s Digest, pp.* 1001, 1002.

*MSS. Op., Dec.* 17, 1853 ; *McKnight, &c., vs. Hardy, &c.*

15 *B. Mon.*, 693 ; *City of Louisville vs. University of Louisville*.

4 *Wheaton*, 630 ; *Dartmouth College case*.

4 *Wheaton*, 659 *to* 668.

13 *Wendell*, 331 ; *People vs. Morris*.

15 *Penn. R.*, 44 ; *Plymouth vs. Jackson*.

4 *Bibb*, 65 ; *Commonwealth vs. Magowan.*
1 *J. J. M.*, 597 ; *Davis vs. Beard.*
2 *Bibb*, 537 ; *Beauchamp vs. Mudd.*
3 *Metcalfe*, 257 ; *Hedger vs. Rennaker.*
4 *Metcalfe*, 75 ; *Chiles vs. Thomas.*
3 *Metcalfe*, 293 ; *Berry & Johnson vs. Randall.*
*Constitution of Ky., art.* 2, *sec.* 37.
*Rev. Statutes, sec.* 20, *art.* 4, *chap.* 63.
5 *Stew. & Port.*, 25 ; *Alabama vs. Winsten.*
6 *Shep.*, 109 ; *Oriental Bank vs. Fraze.*
1 *Humph.*, 48 ; *Cage vs. Hogg.*
*Acts of Dec.* 22, 1798, *and February* 10, 1798.
*Act of January* 30, 1834, *Sess. Acts, pp.* 378–9.
*Act of February* 12, 1842, *Sess. Acts, p.* 33.
*Act of January* 27, 1843, *Sess. Acts, p.* 15.
*Act of February* 13, 1843, *Sess. Acts, p.* 165.
*Act of February* 10, 1845, *Sess. Acts, p.* 77.
*Act of February* 29, 1848.
*Act of February* 24, 1849, *Sess. Acts*, 269.
*Act of March* 3, 1856, *Sess. Acts, pp.* 385–6.
*Act of February* 22, 1860, *vol.* 2, *Sess. Acts, pp.* 113–5.
11 *Ills.*, 1 ; *and* 1 *Humphrey*, 50.
28 *Miss.*, 763.
6 *Barr.*, 138.
2 *Mason*, 312.
1 *Watts*, 54.

E. S. Worthington, Bigger & Moss,　　　　　For Appellees,
CITED—
*Acts above cited for Appellants.*
1 *J. J. M.*, 566–71 ; *Davis vs. Ballard.*
2 *Peters*, 627 ; *Wilkinson vs. Leland.*
1 *Bay.*, 252 ; *Bowman vs. Middleton.*
*Smith on Statutes, chapter* 7.

Justices of Marshall County Court vs. Justices of Calloway County Court.

5 *B. Mon.*, 564 ; *Lewis vs. Harbin.*
9 *Cranch*, 43 *and* 50–1 ; *Terrett vs. Taylor.*

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT :

By an act of the Legislature, approved February 10, 1798, the vacant and unappropriated lands lying within this State, on the south side of the Cumberland river, and below Obey's river, were reserved to be appropriated by subsequent legislation " to the use of seminaries of learning throughout the different parts of this Commonwealth ;" and in the same year, by " An act to estab-lish and endow certain acadamies," the several county courts for the counties in which seminaries had not been established were authorized to have located, surveyed, and patented, within said reservation, six thousand acres of any waste and unappropriated land for the use of such schools as might thereafter be established within either of said counties; said grants being " subject to any future order of the Legislature."

Calloway county was subsequently established ; and, in 1834, six thousand acres of land, west of the Tennessee river, were specially appropriated to it " for the endowment of seminaries of learning ;" which, when patented, should be vested in the justices of the county court of said county, in trust for the use and benefit of seminaries of learning.

The county of Marshall was formed in 1842 wholly out of territory embraced by Calloway county ; and, by the fifth section of an act " for the benefit of Marshall county" (*Session Acts*, 1842–3, *page* 15), it was enacted, " that the county court of Calloway county shall transfer to the county court of Marshall county one half of the six thousand acres of land donated by the State to Calloway county for the erection of academies; and

the Marshall county court shall be governed, in their use of said land, as prescribed to Calloway county in the act making said donations."

No transfer having been made, as directed by the above enactments, the General Assembly, in February, 1843, passed a further act, providing "that the county courts of Calloway and Marshall counties shall have power, a majority of all their members concurring, to sell all seminary lands belonging to said counties; and, when they shall think expedient, appropriate the proceeds thereof to the erection of suitable seminary buildings, or to the common schools in said counties."

On the 10th of February, 1845, an act was passed, in which the refusal of Calloway county to make the transfer, as directed by said act of 1843, was recited, and express authority was conferred on the Marshall county court to institute suit to recover of the county of Calloway the share of Marshall county of said land.

And afterwards, by an act approved the 29th of February, 1848, the justices of Marshall county were authorized to sue the Calloway justices in equity, either in Calloway or Graves county, and recover or have partition of any real estate held by Calloway county, to which the county of Marshall had any claim, either in law or equity; any such real estate, when recovered, to be held by the justices of Marshall, and their successors in office, for the uses contemplated in the original grant or acquisition of the land, "with power to sell and convey said lands for the purposes and uses aforesaid."

In February, 1849, the Male and Female Institute of Calloway county was incorporated—the preamble of the act of incorporation referring to the original donation of 6,000 acres of land, and reciting the sale of a por-

tion of it, and the erection, with its proceeds, of a suitable building for the education of youth of both sexes, in the town of Murray, in Calloway county, as originally contemplated by the Legislature. But this act of incorporation expressly prohibited the sale of so much of said 6,000 acres of land as remained undisposed of, "until the suit authorized to be brought by the Marshall county court against the Calloway county court, for her portion of said seminary lands, be determined, or any other suit or suits which may be instituted to test the claim of the Marshall county court to said lands, shall have been determined : *Provided*, The Marshall county court shall institute such suit or suits within eighteen months from the passage of this act."

And, by a subsequent section of the act, the rights of Marshall county under previous laws are expressly reserved.

And it was afterwards decided by this court, in the case of the *Calloway Male and Female Institute vs. The Calloway County Court*, that said act of incorporation did not invest the Institution with the title to said lands, or any power to sell them.

In 1856 a further act was passed, authorizing the Calloway county court, by a commissioner, to advertise, sell, and convey, upon such terms as said court should direct, all the unsold seminary lands donated to said county by said act of 1834, the principal of the proceeds to be set apart for the purpose of aiding common schools in said county.

Afterwards, by an act approved the 22d of February, 1860, the act of 1856 was construed, and it was declared that nothing therein shall "be so construed as to debar Marshall county from suing for and recovering *any interest* which she legally had in said Calloway county sem-

inary lands, or the proceeds of the same, before said act was passed; and so much of said act as could be so construed is hereby repealed, and said Marshall county is restored to all the rights, under the same conditions and limitations, she had before said act was passed."

This suit was brought by the presiding judge and justices of the Marshall county court, to recover the one half of said 6,000 acres of land, or so much thereof as remained unsold, and Marshall county's part of the proceeds of the land which had been sold.

It appears, and is not controverted, that 2,080 acres of the land remains unsold, and that, before the institution of the suit, 3,840 acres had been sold, from which Calloway county had realized $5,359.

But the Calloway county court, assuming that the right to the land originally donated remained exclusively in Calloway, notwithstanding the division of its territory and population by the formation of Marshall county, resisted a recovery mainly on two grounds:

1st. That said act of the Legislature, requiring one half of said lands to be transferred to the appellants, was unconstitutional and void.

2d. That the proviso in said act of 1849, *that Marshall county should institute suit within eighteen months*, was an act of limitation, and a bar to the action which was brought after the expiration of that time.

Preliminary to these questions, the important inquiry arises whether it is true, as assumed, that the division of the county of Calloway and the formation of the new county of Marshall out of a part of its territory, divested the inhabitants of the new county of the rights they had before as part of the beneficiaries of said donation. In our opinion, the land as originally granted was vested in the county court of Calloway in trust, for the use of all

the inhabitants of the county, according to its corporate limits at the time, for educational purposes; and the subsequent division of its territory and population by the erection of Marshall county did not affect the rights of those whose residences fell within the new county. (15 *Penn. S. R.*, 44, *Plymouth vs. Jackson.*)

Nor do we doubt the power of the Legislature to provide by law for a just and equitable division of the lands, which was rendered necessary by the formation of the new county. But if this were doubtful as an original question, it was settled by this court in the case of the *Calloway Male and Female Institute vs. Hardy, judge of the Calloway county court, &c.* (*MSS. Opinion*, 1855), in which it is said: "The endowment made by the act of 1834 was of such a character as left the State the right to dispose of it in any manner the Legislature might choose to adopt."

· We are clearly of the opinion that Marshall county is entitled to her due proportion of said lands, according to the relative populations of the two counties at the time of their separation, if not to one half, as declared by the act of 1843, unless such right has been lost by legislative enactment or limitation.

We do not think the act of March 3d, 1856, above referred to, as construed and modified by the subsequent act of 1859, operated to impair the rights of Marshall county; and we are aware of no other enactment susceptible of that construction, unless said proviso in the act of 1849 operated to bar a recovery as an act of limitation; but we are of the opinion that the intention of the Legislature was not to limit the right of action of Marshall county to a period of eighteen months, but to prohibit the trustees of said "Male and Female Institute" from selling any portion of the six thousand acres of land until the

contemplated suit by the Marshall county court should be terminated, provided the same should be instituted within eighteen months from the passage of the act.

Nor, in our opinion, was the action barred by either of the general statutes of limitations.

It seems to us the appellants have manifested their right to recover, at least to the extent of the two thousand and eighty acres of the land appearing to have remained unsold.

Wherefore, the judgment dismissing the petition is reversed, and the cause remanded, with directions to the court below to enter a judgment directing a transfer and conveyance of said unsold lands, agreeably to the prayer of the petition, for the uses and purposes therein set forth.